# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4557 | **DATE** | 7/26/2004 |
| **CASE TITLE** | Sagan vs. Option One mortgage Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment (28-1) and denies plaintiffs' motion for summary judgment (21-1). Defendants' motion to modify rescission procedures is terminated as moot (9-1). The Clerk is directed to enter judgment in favor of the defendants.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CANDE SAGAN and SHERRY SAGAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 03 C 4557 |
| | ) | |
| OPTION ONE MORTGAGE CORP. and | ) | |
| WACHOVIA BANK, N.A., f/k/a FIRST | ) | |
| UNION NATIONAL BANK, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
JUL 2 7 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Candy and Sherry Sagan, who live in Hammond, Indiana in a home they inherited, obtained a mortgage loan from BNC Mortgage, Inc. in 1999 to finance repairs on their home and payment of back taxes. BNC assigned the servicing of the loan to Option One Mortgage Corp. *See* Pltfs' Summ. Judg. Ex. A, "Notice of Assignment, Sale or Transfer of Servicing Rights." The Sagans defaulted on their loan payments and went to a mortgage broker to attempt to refinance. An application was submitted to Option One, which made a $66,500 mortgage loan to the Sagans in June 2000. The loan was closed by Indiana Title Network Company. The loan proceeds were disbursed as follows:

Disbursed to others

| | |
|---|---|
| $49,939.38 | Payoff former loan |
| 636.21 | Property taxes |
| 445.69 | Held for last payment owed on former loan |

| | |
|---|---|
| $51,021.28 | Total disbursed |

Settlement charges[1]

| | |
|---|---|
| $ 4,529.00 | Broker's fee (to Illiana Mortgage) |
| 275.00 | Appraisal fee |
| 70.00 | Tax service fee (to Option One) |
| 50.00 | Funding fee (to Option One) |
| 12.00 | Flood certification fee (to Option One) |
| 412.30 | Interest on loan for June 2000 |
| 210.00 | Closing fee (to Indiana Title Network Co.) |
| 50.00 | Title search (to Indiana Title Network Co.) |
| 376.00 | Title insurance (to Indiana Title Network Co.) |
| 140.00 | "EPA, LOC, COMP & ARM END" (to Indiana Title Network Co.) |
| 45.00 | Overnight courier fee (3 x $15.00) (to Indiana Title Network Co.) |
| 23.00 | Wire fee (to Indiana Title Network Co.) |
| 55.00 | Recording fees |
| $ 6,247.30 | Total settlement charges |

The remainder of the loan proceeds, $9,231.42, was disbursed to the Sagans. *See* Dfdts' Summ. Judg. Ex. F (RESPA statement).

The loan was assigned to a trust for which Wachovia Bank serves as trustee. The Sagans made only one payment on the Option One loan and then defaulted. Wachovia Bank filed a foreclosure suit in Indiana state court in December 2000, and a judgment of foreclosure was entered on April 23, 2001.

On March 22, 2002, the Sagans, acting through counsel, sent Option One a letter purporting to rescind the loan transaction pursuant to the Truth in Lending Act, 15 U.S.C. § 1635. The letter stated that the points and fees on the loan had exceeded 8% of the total loan amount, and thus the Sagans were entitled to have received the additional disclosures required by the Home Owners Equity Protection Act, 15 U.S.C. § 1639(a)(1). Because these disclosures had

---

[1] "Settlement charges" is the term used on the RESPA statement executed in connection with the closing of the loan from Option One.

not been given, the Sagans' letter said, their right to rescind the loan transaction, which otherwise would have expired three days after the transaction, remained open. *See* 15 U.S.C. § 1639(j). The letter also stated that the Sagans were "poor and unsophisticated consumers" with a $700 per month income and that the loan had been made without regard to their ability to pay, purportedly in violation of 15 U.S.C. § 1639(h), which prohibits lenders from engaging in a practice of making HOEPA-covered mortgages without regard to the borrowers' ability to repay. Counsel asserted in the letter that the security interest granted by the mortgage was rendered void by the rescission, and he requested that Option One "return to [the Sagans] all monies paid and to take action necessary or appropriate to reflect termination of the security interest." Dfdts' Summ. Judg. Ex. J.

Option One responded with a letter dated April 11, 2002 stating that the points and fees on the loan had not exceeded 8% of the total loan amount. Dfdts' Summ. Judg. Ex. K. The calculation by which Option One reached this conclusion was set out in the letter. The letter also stated that contrary to the claim in the Sagans' letter, their loan application had disclosed an income of $3500 per month.

On February 21, 2003, the Sagans' home caught fire, resulting in extensive damage. (The record does not disclose how the Sagans were still living in the house so long after entry of the foreclosure judgment, but that does not affect the matters the Court must decide in this case.) They remained in the house and tried to raise money for repairs. A claim was made under their homeowner's insurance policy. As the mortgagee, Option One was designated on the policy as co-insured, and it was entitled to apply the proceeds of the insurance claim to the outstanding balance on the loan. Option One obtained a check for just over $34,000 in settlement of the

3

insurance claim and notified the Sagans that this would be applied to the loan balance unless the Sagans contacted Option One. They did not do so, and Option One applied the proceeds to the loan balance.

The Sagans filed this suit in late June 2003. Their complaint alleged that they were entitled to rescind the loan because they did not receive the disclosures required by HOEPA. Both sides have moved for summary judgment. For the reasons stated below, the Court denies plaintiffs' motion for summary judgment and grants defendants' motion for summary judgment.

## Discussion

HOEPA sets out special requirements for "high-cost" mortgage loans. *See* 15 U.S.C. §§ 1602(aa) & 1639. A HOEPA loan is a mortgage loan secured by a consumer's principal dwelling, other than a loan made to finance the dwelling's original construction or acquisition, in which the loan's annual percentage rate of interest exceeds ten percent, or the "total points and fees" payable by the consumer at or before the closing exceeds the greater of eight percent of the total loan amount or $400. 15 U.S.C. § 1602(aa)(1)(A) & (B). A lender that makes such a loan is required to provide several specific disclosures not less than three business days before the transaction is consummated. 15 U.S.C. § 1639(a) & (b). The statute contains several other requirements and prohibitions that are not at issue in this case.

A lender that fails to make the required disclosures faces an extended period in which the borrower can rescind the loan transaction under TILA. *See* 15 U.S.C. §§ 1639(j) & 1635(a). Under normal circumstances, the rescission period is three days after the transaction is consummated. But if the lender fails to make the required disclosures, the period extends until three days after the disclosures are made, up to a maximum of three years. 15 U.S.C. § 1635(a)

4

& (f).

The Sagans contend the longer period applies to them because Option One failed to make the disclosures required under HOEPA. It is undisputed that Option One did not provide HOEPA disclosures, and thus the issue is whether it was required to do so. Because the annual percentage rate on the loan did not exceed ten percent, the case turns on whether the points and fees exceeded eight percent of the total loan amount.

In evaluating each side's motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party, drawing reasonable inferences in that party's favor, and inquires whether the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(c).

Option One loaned the Sagans $66,500. The "total loan amount" is determined by deducting prepaid interest and "total points and fees" from the principal amount of the loan. *See* 12 C.F.R. Pt. 226, Supp. I, par. 32(a)(1)(ii). The term "points and fees" is defined as follows in the regulations governing HOEPA:

(1) [P]oints and fees means:

> (i) All items required to be disclosed under § 226.4(a) and 226.4(b), except interest or the time-price differential;
>
> (ii) All compensation paid to mortgage brokers;
>
> (iii) All items listed in § 226.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor; and
>
> (iv) Premiums or other charges for credit life, accident, health, or loss-of-

5

income insurance, or debt-cancellation coverage (whether or not the debt-cancellation coverage is insurance under applicable law) that provides for cancellation of all or part of the consumer's liability in the event of the loss of life, health, or income or in the case of accident, written in connection with the credit transaction.

12 C.F.R. § 226.32(b)(1). The "items required to be disclosed under § 226.4(a) and 226.4(b)," as referenced in § 226.32(a)(1)(i), consist of the various components of what § 226.4 includes in the "finance charge." *See* 12 C.F.R. § 226.4(a) & (b). The "items listed in § 226.4(c)(7)," as referenced in § 226.32(b)(1)(iii), are described as follows:

> (7) Real-estate related fees. The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:
>
> (i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.
>
> (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.
>
> (iii) Notary and credit report fees.
>
> (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.
>
> (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

12 C.F.R. § 226.4(c)(7).

Prepaid interest totaling $412.20 was withheld from the Sagans' loan. It is undisputed that this amount is deducted from the loan proceeds in determining the "total loan amount."

Option One contends that the "total points and fees" included the following items:

| | |
|---|---|
| $ 4,529.00 | Broker's fee |
| 70.00 | Tax service fee |

6

|          |                       |
|----------|-----------------------|
| 50.00    | Funding fee           |
| 12.00    | Flood certification fee |
| 210.00   | Closing fee           |
| 15.00    | Overnight courier fee |
| $4,886.00 | Total points and fees |

If Option One is correct, then the "total loan amount" for HOEPA purposes would be $61,201.80 ($66,500.00, less $412.20, less $4,886.00). The "total points and fees" of $4,886.00 amount to 7.98% of $61,201.80. Thus if Option One is correct in its calculation of total points and fees, HOEPA disclosures were not required.

The Sagans challenge Option One's calculation. They contend that the prepayment penalty of $2,053.44 on the prior loan, the appraisal fee of $275.00, the $376.00 title insurance fee, and a second $15.00 overnight courier fee each should be considered as part of the total points and fees. If the Sagans are correct with regard to any one of these charges, Option One is not entitled to summary judgment, and the Sagans may be entitled to summary judgment.

The Sagans' argument regarding the prepayment penalty on the prior loan is predicated on their contention that Option One was the lender on the prior loan and thus received the prepayment penalty. But the Sagans have no evidence to support that contention. Though Option One collected payments on the prior loan, it did so as a servicer of the loan, not as an assignee. A servicer is an entity responsible for receiving scheduled periodic payments from the borrower, *see* 12 U.S.C. § 2605(i)(2) & (3) (cross-referenced in 15 U.S.C. § 1641(f)(3)), but it is not considered an assignee of the loan for purposes of TILA (of which HOEPA is a part) "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). The document that made Option One the servicer demonstrates that it did not own the earlier debt; all that was

7

assigned was the right to collect payments. *See* Pltfs' Summ. Judg. Ex. A, "Notice of Assignment, Sale or Transfer of Servicing Rights." Though Option One did collect the prepayment penalty, it did so on behalf of BNC Mortgage and then disbursed that amount to BNC. *See* Esparza Affid. ¶ 7.

The Sagans argue that the appraisal and title insurance charges charged by Option One were not reasonable and thus are included in the calculation of "points and fees." *See* 12 C.F.R. §§ 226.32(b)(1) & 226.4(c)(7). Their argument, however, is largely predicated on the contention the Court has just rejected, namely the claim that Option One was the assignee of the prior loan. The Sagans say that because the property had just been appraised and title insurance had been obtained less than a year earlier in connection with the BNC Mortgage loan, it was unreasonable for Option One to reappraise the property and obtain new title insurance in connection with the loan in this case. The Court likely would reject this argument even were the Sagans correct that Option One was the assignee of the prior loan as TILA defines that term. Any number of events could have occurred in the intervening months that could have imposed encumbrances on the property or affected its value, and thus it could not have been unreasonable for Option One to obtain new title insurance and have the property reappraised. But more importantly, the Court has already concluded that there is no evidence that Option One owned the prior loan or that it did anything other than collect payments as a servicer. Because Option One was making a loan on the property for the first time, no reasonable fact finder could determine that it was unreasonable to obtain title insurance and an appraisal. (The Sagans do not argue that the particular charges for these items were too high.)

This brings us finally to the disputed $15.00 overnight courier fee. As indicated earlier,

8

"points and fees" for purposes of the HOEPA eight percent calculation includes "[a]ll items required to be disclosed under [12 C.F.R.] § 226.4(a) and 226.4(b)," except for certain items not relevant in this case. 12 C.F.R. § 226.32(b)(1). Section 226.4(a) and (b) require disclosure of the "finance charge." That regulation provides that the "finance charge" includes fees charged by a closing agent under the following circumstances:

> (2) *Special rule; closing agent charges.* Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor:
>
> > (i) Requires the particular services for which the consumer is charged;
> >
> > (ii) Requires the imposition of the charge; or
> >
> > (iii) Retains a portion of the third-party charge, to the extent of the portion retained.

12 C.F.R. § 226.4(a)(2). The parties agree that the issue in this case is whether the creditor, Option One, "require[d] the imposition" of the overnight courier charges. If so, the courtier charges were part of the points and fees for purposes of HOEPA.

The Sagans actually paid three $15.00 overnight courier fees in connection with the closing of their loan from Option One. Each of these fees was assessed by Indiana Title Network Company, located in Crown Point, Indiana, which conducted the loan closing. *See* Kvachkoff Affid. ¶¶ 4 & 8. One of the courier fees was incurred to send Option One the loan package, including the original closing documents. *See id.* ¶¶ 7 & 8. The parties agree that overnight delivery of the loan package was required by Option One and that this particular $15.00 charge is properly included in the "points and fees" for HOEPA purposes. *See also id.* ¶ 7.

The Sagans contend that a second $15.00 charge, incurred to send the payoff check from

9

the loan proceeds by overnight delivery to Option One, was also required by Option One and thus must be included in the HOEPA points and fees. But in responding to Option One's summary judgment motion, the Sagans admitted each of the following propositions:

> 12. Option One only required overnight delivery of the closed loan package. Hurley Aff. ¶¶ 9, 16; Kvachkoff Aff. ¶ 7.
>
> 13. Option One did not require the other two deliveries for which overnight courier fees were charged by Indiana Title. Hurley Aff. ¶¶ 10, 16; Kvachkoff Aff. ¶7.
>
> 14. The closing instructions by Option One to Indiana Title state that the "closed loan package [is] to be returned to lender 24 hours after signing documents." Exhibit G.
>
> 15. There are no instructions pertaining to the other two deliveries for which overnight fees were assessed by Indiana Title. Hurley Aff. ¶¶ 9-10; Exhibit G.
>
> 16. Indiana Title chose on its own accord, based on its own practices and procedures, to make the other two deliveries by overnight courier and to assess a fee for these deliveries. Hurley Aff. ¶¶ 10-12; Kvachkoff Aff. ¶¶ 7-9.
>
> 17. The closing instructions for the Mortgage Loan were presented to and signed by Plaintiffs as the June 6, 2000 closing. Hurley Aff. ¶ 5; Kvachkoff Aff. ¶5; Exhibit G; Plaintiffs' Responses to Request to Admit ¶ 7.
>
> 18. Option One did not receive any portion of the courier fees imposed by Indiana Title in connection with the Mortgage Loan. Hurley Aff. ¶ 13; Kvachkoff Aff. ¶ 8; Exhibit F.

*See* Dfdts' Jt. 56.1(a)(3) Statement of Facts ¶¶ 12;18; Pltfs' Resp. to Dfdts' Jt. Statement of Facts ¶¶ 12-18 (stating that each one of the quoted propositions is "undisputed"). The Sagans' admissions of these facts preclude them from contending that the second $15.00 fee was required by Option One. And even if they had not done so, their evidence – primarily a draft closing statement prepared by Option One that included the second courier fee as a charge that would be

assessed – is insufficient to create a genuine issue of fact regarding whether Option One required the fee: the fact that Option One understood the fee would be charged does not mean that it asked or insisted that it be charged.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [docket # 28-1] and denies plaintiffs' motion for summary judgment [docket # 21-1]. Defendants' motion to modify rescission procedures is terminated as moot [docket # 9-1]. The Clerk is directed to enter judgment in favor of the defendants.

Date: July 26, 2004

_____
MATTHEW F. KENNELLY
United States District Judge